176 N.J. Super. 164 (1979)
422 A.2d 466
STATE OF NEW JERSEY, PLAINTIFF,
v.
JOHN MAGUIRE, DEFENDANT.
Superior Court of New Jersey, Resentencing Panel.
Decided December 12, 1979.
*166 Before Judges MARZULLI, COLEMAN and YANOFF.
Carole M. Henderson, Deputy Attorney General for the State (John J. Degnan, Attorney General, attorney).
James K. Smith, Jr., Assistant Deputy Public Defender for defendant (Stanley C. Van Ness, Public Defender, attorney).
The opinion of the court was delivered by MARZULLI, J.S.C.
*167 On December 16, 1975 defendant was found guilty of felony murder. Immediately thereafter a sentence of life in prison was imposed. He is presently serving that sentence.
Defendant brings this motion for resentencing under the New Jersey Code of Criminal Justice, N.J.S.A. 2C:1-1 d(2). Defendant contends he has been sentenced to a maximum term of imprisonment for an offense committed prior to the effective date of the Code, which exceeds the maximum established by the Code for such offense. Defendant argues the maximum for murder under the Code is 30 years, although he admits under N.J.S.A. 2C:43-7, the extended term provision, a sentencing judge has discretion to impose a life sentence. Defendant correctly states that under Title 2A there was no such discretion, the court being compelled to impose a life sentence upon conviction of murder in the first degree. N.J.S.A. 2A:113-1, 113-4; State v. Funicello, 60 N.J. 60 (1972), cert. den. sub nom. New Jersey v. Presha, 408 U.S. 942, 92 S.Ct. 2849, 33 L.Ed.2d 766 (1976); State v. Corbitt, 74 N.J. 379 (1977), aff'd 439 U.S. 212, 99 S.Ct. 492, 58 L.Ed.2d 466 (1978). Once defendant has been found guilty of murder in the first degree, the trial judge has no alternative except to "pronounce the prescribed, mandatory sentence of life imprisonment." A probation report should be prepared for the assistance of prison authorities. State v. Robinson, 139 N.J. Super. 58, 65 (App.Div. 1976).
In endeavoring to determine whether this case qualifies for resentencing under the new Code, this court must decide whether the sentence defendant is serving is greater than the maximum established by the Code for such an offense. What is the meaning of the word "maximum" as it applies to murder under the Code?
N.J.S.A. 2C:11-3 b provides:
Murder is a crime of the first degree but a person convicted of murder may, notwithstanding the provisions of 2C:44-1 f, be sentenced by the court (1) to a term of 30 years of which the person must serve 15 years before being eligible *168 for parole, or (2) as in a crime of the first degree except that the maximum term for such a crime of the first degree shall be 30 years. Nothing contained in this subsection shall prohibit the court from imposing an extended term pursuant to 2C:43-7 for the crime of murder. [Emphasis supplied]
We note that a 30-year term is not mandatory, since even in murder cases sentence may be suspended. N.J.S.A. 2C:43-2 b.
N.J.S.A. 2C:43-7 a provides that the extended term for murder shall be for a specific term between 30 years and life. The extended term also is not mandatory and requires exercise of judicial discretion. Under N.J.S.A. 2C:44-6 e a defendant must be given notice and the court must state the grounds upon which it will rely to impose an extended term contemplated under N.J.S.A. 2C:43-7.
However, the Legislature recognized that murder was a unique offense because of its heinous nature. Therefore, it gave to the sentencing court greater latitude in imposing an extended term for murder by making the imposition of such an extended term discretionary with the trial judge, as opposed to satisfying the criteria set forth in N.J.S.A. 2C:44-3 as required in other cases.
Before comparing the maxima under Title 2A and Title 2C one must look to the underlying intent of the Code and to the consequences of any ruling made on the more than 100 life sentences which we will be required to review.
N.J.S.A. 2C:1-2, entitled "Purposes; Principles of Construction," provides in subsection b:
b. The general purposes of the provisions governing the sentencing of offenders are:
(1) To prevent and condemn the commission of offenses;
(2) To promote the correction and rehabilitation of offenders;
(3) To insure the public safety by preventing the commission of offenses through the deterrent influence of sentences imposed and the confinement of offenders when required in the interest of public protection;
(4) To safeguard offenders against excessive, disproportionate or arbitrary punishment;
(5) To give fair warning of the nature of the sentences that may be imposed on conviction of an offense;
(6) To differentiate among offenders with a view to a just individualization in their treatment; and

*169 (7) To advance the use of generally accepted scientific methods and knowledge in sentencing offenders. [Emphasis supplied]
N.J.S.A. 2C:1-2 c provides:
The provisions of the code shall be construed according to the fair import of their terms but when the language is susceptible of differing constructions it shall be interpreted to further the general purposes stated in this section and the special purposes of the particular provision involved. The discretionary powers conferred by the code shall be exercised in accordance with the criteria stated in the code and, insofar as such criteria are not decisive, to further the general purposes stated in this section. [Emphasis supplied]
It is the court's responsibility to determine in each case whether the particular statute is clear and unambiguous. Cold Indian Springs Corp. v. Ocean Tp., 154 N.J. Super. 75, 94 (1977), aff'd 161 N.J. Super. 586 (App.Div. 1978).
Chief Justice Weintraub, writing for the court in State v. Madden, 61 N.J. 377, 389 (1972), concerning the interpretation of murder (under N.J.S.A. 2A:113-1), stated:
We must enforce the legislative will if it is within constitutional limits whether we approve of the legislative intent or not. But it is our initial task to seek that intent, and to that end we must consider any history which may be of aid. Surely in so grave a matter as a capital offense, the Court ought to be certain that it does not read a statute to exceed the truly legislative objective.
Our task is simplified somewhat since all doubts as to meaning of a penal statute should be resolved in favor of the defendant. State v. Brenner, 132 N.J.L. 607, 611 (E.E.A. 1945).
In determining the meaning of the word "maximum" as it applies to murder under the Code, one must be guided by the rules of statutory interpretation.
In Loboda v. Clark Tp., 40 N.J. 424 (1963), the court said:
... words alone do not control; rather it is the internal sense of the law which controls. The intention comes from a general view of the whole expression rather than from the literal sense of the particular terms ... The nature of the subject matter, the contextual setting and statutes in pari materia must all be viewed together in seeking the legislative intent. The import of a particular word or phrase is controlled accordingly. Isolated expressions cannot be invoked to defeat a reasonable construction. [at 435, 193 A.2d 97]
When a statute is ambiguous the court can resort to extrinsic aids in order to determine the legislative intent.
*170 The Senate Judiciary Committee's statement to Senate Bill 738 on page one reads as follows:
By Judiciary Committee amendment, a provision of the code which would have permitted any person imprisoned on the effective date of the code, to move to have his sentence reviewed and to be sentenced as if he had been convicted under the code, was changed to permit such review only if the person was imprisoned for any offense decriminalized by the code or was sentenced to a maximum term of imprisonment which exceeds the maximum established by the code for such an offense. In either case, the imposition of a new sentence would be discretionary rather than mandatory. [Emphasis supplied]
Again, at page four it reads:
Murder, under the code, is a crime of the first degree; however, persons found guilty of murder may be sentenced up to 30 years imprisonment (the maximum for other first degree crimes is 20 years imprisonment) (See 2C:3-11 b.) The code also provides a special extended term of imprisonment between 30 years and a life sentence (See 2C:43-7(1)). [Emphasis supplied]
A reading of N.J.S.A. 2C:1-1 d(2) indicates the Legislature was referring to specific offenses when discussing the maximum penalties established by the Code.[1]
By establishing extended terms under N.J.S.A. 2C:43-7 the Legislature permits a sentencing judge to impose an additional penalty upon a defendant who has been convicted of murder or a crime of the first, second or third degree, provided certain prerequisites have been satisfied. N.J.S.A. 2C:44-3, 2C:44-6. Thus, an extended term can be imposed upon a defendant only after conviction of a specific offense, and the additional criteria as provided in the Code have been met.
In State v. Spindel, 24 N.J. 395, 402-403 (1957), the court indicated the intent of the statute is also determined by the occasion and necessity of the law, the mischief felt and the remedy in view. The new law should be read in the light of the old law and the evils to be remedied. Union Cty. Park Comm'n v. Union Cty., 154 N.J. Super. 213, 223 (1976), aff'd 154 N.J. Super. 125 (App.Div. 1977).
*171 As a practical matter, defendants convicted under Title 2A provisions will serve in the same institutions as defendants convicted under Title 2C provisions. Problems of disparity will undoubtedly exist if the sentences served are unreasonably different. One cannot expect an incarcerated defendant to understand that he must serve a mandatory life sentence because the offense was committed at a specific time. It is reasonable to infer that the Legislature had this consideration in mind in the enactment of N.J.S.A. 2C:1-1 d(2).
The Legislature did not intend a life sentence be imposed in all murder cases; it permits such a sentence but structures judicial discretion to impose it.
The maximum sentence for "such an offense" is therefore to be distinguished from the maximum sentence permissible for murder. To argue otherwise ignores the legislative intent to apply the sentencing provisions retrospectively as well as prospectively. Taking into consideration the strong underlying purpose of the Code to diminish disparity between those sentenced for Title 2A offenses and those sentenced for Title 2C offenses, we conclude the maximum sentence for murder under the Code is 30 years. It may be argued that the parole provisions under Title 2C might be considered more stringent than under Title 2A, but one cannot argue that life imprisonment does not exceed the 30 years. Therefore, one must conclude that the extended term provision cannot be considered when determining the maximum sentence for "such an offense."
Defendant's application to be considered for resentencing is granted.
This is not intended to indicate that this defendant, or the more than 100 defendants who are similarly situated, will receive a different sentence from that which they are presently serving. What it does mean is that this court will be permitted to exercise its discretion to impose or not to impose a sentence in accordance with the criteria established under the new Code of Criminal Justice.
*172 COLEMAN, J.S.C. (dissenting).
The question addressed by this panel in these cases is whether the maximum sentence received by defendants convicted of first degree murder under N.J.S.A. 2A:113-1 (a mandatory term of life imprisonment) exceeds the maximum sentence permitted for such an offense under N.J.S.A. 2C:11-3. The answer depends on whether an extended term for murder under N.J.S.A. 2C:43-7 a is to be considered as part of the maximum sentence permitted within the meaning of N.J.S.A. 2C:1-1 d(2). Even if the extended term is considered as part of the permissible maximum sentence, a question exists as to whether the mandatory life sentence under Title 2A exceeds the discretionary life sentence under Title 2C.
The unique treatment accorded to the crime of murder under the new Code of Criminal Justice compels me to the conclusion that the maximum under Title 2A does not exceed that under Title 2C. I therefore dissent from the majority's decision.
The decision to impose an extended term in a murder case cannot be arbitrary and is subject to the restrictions imposed by N.J.S.A. 2C:44-1 and N.J.S.A. 2C:44-6 e. However, since N.J.S.A. 2C:43-7 provides that murder itself is a proper ground to permit imposition of an extended term, the usual criteria of N.J.S.A. 2C:44-3 do not apply. Significantly, the extended term provisions differentiate between murder and all other gradations of crime in the maximum extended terms and conditions which are permitted. Similarly, murder is specifically excepted from the presumptive sentences established in N.J.S.A. 2C:44-1 f. Together these provisions suggest that murder was not intended by the Legislature to be dealt with in the same manner as any other crime. This distinctive treatment must be considered in evaluating what was intended by the Legislature in the words "the maximum established by the Code for such an offense." N.J.S.A. 2C:1-1 d(2).
A court must follow certain well established principles when attempting to ascertain the legislative intent where that intent *173 is not clear. A court cannot rewrite or ignore clear and unambiguous language in order to effectuate a conjectured but unexpressed intent. Hogg v. Employees Retirem. Sys., Essex Cty., 56 N.J. Super. 130, 134 (App.Div. 1959). Statutes should be interpreted according to the most natural and obvious import of the language without resorting to subtle or forced construction for the purpose of limiting or extending their operation. Skowysz v. Ventnor, 110 N.J. Super. 340, 349 (Law Div. 1969), aff'd 56 N.J. 168 (1970). Statutory language is to be given its ordinary meaning in the absence of a specific indication to the contrary. Grogan v. DeSapio, 11 N.J. 308, 323 (1953).
I therefore conclude that "maximum" in N.J.S.A. 2C:1-1 d(2) means the greatest or highest legal sentence which a court could impose for the crime of murder. Black's Law Dictionary (3 ed.) defines "maximum" as: "The greatest quantity or highest in degree attainable or attained, or the greatest or highest allowed by law or authority." Nowhere in the Code does the Legislature indicate that "maximum" is to be given any other reading. Since an extended term is available in murder cases without regard to the usual criteria of N.J.S.A. 2C:44-3, the maximum term for murder under the Code is life imprisonment.[1]
The majority indicates its disapproval of the mandatory life sentence imposed for murder under Title 2A. I also disapprove of mandatory sentences. They deprive a sentencing court of the traditional discretion so vital to a judge's duty to impose a just punishment under the circumstances on the particular defendant. Title 2C restores to the court its controlled discretion to determine the appropriate sentence in cases of murder, as in all other cases. Yet as shown above, the legislative treatment of murder shows a deliberate decision to impose sentence for this serious crime in a manner and degree different than any other crime. Indeed, since N.J.S.A. 2C:43-7 b permits the sentencing *174 court to restrict the defendant's eligibility for parole, it is now possible that the discretionary life sentence of Title 2C could prove more harsh to an individual defendant than the mandatory life sentence with earlier eligibility would have been. I therefore conclude that a mandatory life sentence does not exceed a discretionary life sentence.
The challenge presented to this panel is to accomplish the result intended by the Legislature in the manner that it has established. The danger of such a task lies in overextending the process of judicial analysis and entering the process of legislating. "It is worth repeating that the judiciary is not concerned with the good sense of a statute. Policy matters are the exclusive responsibility of the legislative branch of government." Two Guys from Harrison, Inc. v. Furman, 32 N.J. 199, 229 (1960). The design of the range of penalties for a particular offense is a legislative, not a judicial function. State v. Hubbard, 123 N.J. Super. 345, 351 (App.Div. 1973), and State v. Bausch, 171 N.J. Super. 314 (App.Div. 1979).
Notwithstanding my full appreciation for the just goals sought by the majority, I respectfully dissent from their analysis of legislative intent and would deny all applications for resentencing for first degree murder.
NOTES
[1] N.J.S.A. 2C:1-1 d(2): "... for an offense committed prior to the effective date which exceeds the maximum established by the Code for such offense" [Emphasis supplied]
[1] I express no opinion at this time as to whether or not the extended term provisions are to be considered as part of the maximum sentence permitted under the Code for any other offense.